**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

JAMES KEITH MARTIN,

Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

Defendant.

Case No.: 1:15-cv-01660-BAM

**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT**

## INTRODUCTION

Plaintiff James Martin ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 405(g), 1383(c)(3). The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe. The Court finds the decision of the Administrative Law Judge ("ALJ") to be supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court affirms the agency's determination to deny benefits.

///

///

**FACTS AND PRIOR PROCEEDINGS**

On February 29, 2012 and March 5, 2012, Plaintiff filed his current applications for SSI and DIB, respectively. AR 211-17, 218-26.[1] Plaintiff alleged that he became disabled on May 5, 2011, due to Tourette's syndrome, schizophrenia, vitamin B-12 deficiency, and high blood pressure. AR 239. Plaintiff's applications were denied initially and on reconsideration. AR 148-52, 158-62. Subsequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 164-65. ALJ Danny Pittman held a hearing on January 9, 2014, and issued an order denying benefits on March 4, 2014. AR 26-37. Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. AR 1-7. This appeal followed.

**Hearing Testimony**

The ALJ held a hearing on January 9, 2014 in Fresno, California. AR 381-417. At the administrative hearing, Plaintiff appeared and testified with the help of an attorney and lay witness Kenneth Cain. The ALJ also sought testimony from Vocational Expert ("VE") Cheryl Chandler. AR 379.

Plaintiff was born on May 27, 1958, making him 55 years old at the time of the hearing. AR 383. He has a high school diploma with some college, and currently lives at home with his mother and stepfather, who are retired. AR 384. At one time Plaintiff had a driver's license but at the time of the hearing his license was suspended. AR 385. Due to this suspension, he no longer drives and instead gets around by walking. AR 385. Plaintiff explained that he was laid off from his last job as a janitor, but felt that otherwise he would still be working there. AR 388.

When asked about his impairments, Plaintiff claimed that he experienced hallucinations and depression; his impairments are primarily mental. AR 390. Plaintiff testified that he takes Abilify for his hallucinations and mental impairments though its effectiveness varies and it sometimes caused side effects like sleepiness. AR 391-393. Plaintiff sees a psychiatrist but has never been hospitalized overnight for mental issues. AR 395. While he takes his medication regularly, sometimes he forgets to take it as he has difficulty with memory. AR 395-96. He also has difficulty following directions,

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

making decisions, and functioning around large groups of people. AR 396-97. His mental symptoms have persisted since May 2011, but have not worsened. AR 397.

During a typical day, Plaintiff testified that he basically did “nothing;” though he can cook, do housework, laundry, and yard work, he does these activities only once in a while. AR 399-400. According to Plaintiff, his depression and concentration problems prevent him from being more active. AR 399-400. Plaintiff experienced only one or two “good days” out of the week; otherwise, he spent most of the day in bed. AR 403. Plaintiff testified that he regularly attends church and is able to follow the sermon. AR 400.

Following Plaintiff’s testimony, the ALJ also heard testimony from Plaintiff’s pastor, Kenneth Cain. AR 407. Mr. Cain stated that Plaintiff attends church three times a week, “without fail.” AR 407. Mr. Cain’s impressions of Plaintiff are that he demonstrates symptoms similar to Tourette’s where Plaintiff is unable to control his body and will treat disagreements as personal attacks. AR 408. When asked, Plaintiff helps around the church doing simple tasks like changing light bulbs, but required some supervision and being talked through tasks. AR 409. Mr. Cain stated that, at least once every two weeks, Plaintiff would have to leave during the middle of a church service to take a “breather.” Mr. Cain also testified that Plaintiff struggles to fully understand the sermon. AR 410.

Thereafter, the ALJ elicited testimony from vocational expert (“VE”) Cheryl Chandler. AR 412. The VE characterized Plaintiff’s past work as industrial cleaner, salesperson, and industrial truck operator. AR 412-13. The ALJ asked the VE to assume a hypothetical individual with no exertional limitations, but who could only perform simple routine tasks with limited public contact and no more than occasional interactions with coworkers. AR 413. The VE testified that such an individual could perform Plaintiff’s past relevant work as a custodial cleaner, or alternatively, as a lumber straightener, truck washer, or box bender. AR 414.[2]

**Medical Record**

The entire medical record was reviewed by the Court. AR 90-378. The medical evidence will be referenced below as necessary to this Court’s decision.

---

2 Plaintiff does not challenge the sufficiency of the hypothetical questions posed to the vocational expert.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 26-37. More particularly, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since May 5, 2011, his application date. AR 28. Further, the ALJ identified major depressive disorder with psychotic features, anxiety disorder, and obsessive compulsive disorder as severe impairments. AR 28. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or equal any of the listed impairments. AR 29.

Based on his review of the entire record, the ALJ determined Plaintiff could perform a full range of work at all exertional levels, but involving no more than simple, routine tasks with limited public contact and occasional interaction with coworkers. AR 30. The ALJ found that Plaintiff could return to his past relevant work as an industrial cleaner. AR 35. The ALJ also found other jobs existing in significant numbers in the national economy that Plaintiff could perform. AR 35-36. The ALJ therefore concluded that Plaintiff was not disabled under the Social Security Act. AR 37.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards,

and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[3]

Plaintiff raises two challenges to the ALJ's decision. First, Plaintiff contends that the ALJ erred by failing to give specific and legitimate reasons for discounting the opinions of the treating and examining physicians. (Doc. 12 at 15-22). Second, Plaintiff argues that the ALJ's credibility determination is not supported by substantial evidence. (Doc. 12 at 22-26).

**1. The ALJ Correctly Weighed the Medical Evidence**

In analyzing the record, the ALJ reviewed the following evidence.

**A. Dr. Hunt – Treating Psychiatrist**

Plaintiff began treating with Dr. Hunt in August of 2012 on a monthly basis. AR 332. Dr. Hunt diagnosed severe OCD and a mood disorder. AR 332. Plaintiff reported that he had been treated for past anxiety and paranoia in 2011. AR 356. Those symptoms improved with Prozac and Prolixin which he continued to take until June of 2012, when he began experiencing problems with sedation

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

and incoordination. AR 356. Despite improvements with medication, Plaintiff continued to experience "inappropriate thoughts," described as "egodystonic" to him. AR 356.

On October 8, 2012, at a follow-up visit with Dr. Hunt, Plaintiff reported struggling with intermittent agitation; continued intrusive, "dirty" thoughts during the day that worsen at night; "lots of fatigue;" and difficulty sleeping. AR 359. He had stopped his medications a few weeks prior because of feeling dizzy and off-balance: he reported feeling better since discontinuing his medication, his psychiatric symptoms had not worsened, but he preferred to try different medications. AR 359. On examination, Plaintiff was "appropriately dressed and well-groomed but anxious and mildly irritable. AR 359. Plaintiff reported "lots of intrusive bad thoughts, but no [auditory hallucinations] for some time." AR 359. Plaintiff reported that he "would like the intrusive thoughts to resolve." AR 359. Plaintiff was also reported as having a continued low appetite; and some depressive symptoms. AR 359. Dr. Hunt diagnosed a Mood Disorder, not otherwise specified; OCD, severe; and a history of psychosis. AR 359. Plaintiff's problems were listed as related to "accessing health care, finances, and occupation." AR 360.

On November 13, 2012, he was doing "about the same," although his appetite and mood had improved a "little." His intrusive thoughts continued, along with nightmares and difficulty sleeping. AR 361. Examination showed him to be anxious, mildly dysphoric, and he continued to have severe intrusive thoughts and severe anxiety with large numbers of people. AR 361. Plaintiff reported that "Abilify has been a little helpful with mood." AR 361. "Given his improvement with Abilify," Dr. Hunt increased his dosage from 5mg to 10mg. AR 361. His Global Assessment Functioning ("GAF") was assessed at 50. AR 362.

On June 25, 2013, Plaintiff returned to Dr. Hunt, reporting that, due to lightheadedness from the 10-milligram dose of Abilify, he had discontinued it about one month prior. AR 373. Since then, he had been struggling with more anger and agitation, and agreed to restart Abilify at the lower, 5-milligram dosage. AR 373. On examination, Plaintiff appeared mildly anxious, but verbal and cooperative. He reported some increase in his intrusive thoughts and nightmares but overall he was sleeping better in general. AR 373.

At a January 8, 2014 follow-up with Dr. Hunt, Plaintiff was again reported as struggling with anxiety and depression. AR 376. He had been taking the 10-milligram dosage of Abilify "faithfully," but found that it "sometimes does not help enough." AR 376. He was having "lots of nightmares," continued trouble with sleep, and a recent increase in the intrusive thoughts, adding that he is sometimes "walking vertical," a symptom he said that he had experienced with a neuroleptic medication he had taken previously. AR 376. Dr. Hunt clarified that she wanted him to take the lower, 5-milligram dose of Abilify, on which he was restarted. AR 376.

During her treatment of Plaintiff, Dr. Hunt completed a psychiatric/psychological impairment questionnaire at the request of Plaintiff's counsel on February 12, 2013. AR 332-39. Dr. Hunt stated she first saw Plaintiff in August 2012 and thereafter on a monthly basis. AR 332. Dr. Hunt opined that Plaintiff was markedly limited in his ability to maintain attention and concentration for extended periods, perform activities within a schedule, sustain an ordinary routine, or complete a normal workday or workweek without interruptions from psychiatric symptoms. AR 335-36. Dr. Hunt also stated that Plaintiff would be incapable of even "low stress" work and would miss more than three days of work per month. AR 338-39.

With respect to Dr. Hunt's opinion, the ALJ found as follows:

> I give little weight to these findings as their severity is not supported by the medical records and they are not consistent with other substantial evidence in the record. These drastic differences may be the possible result of sympathy for the patient or an effort to avoid unnecessary tension with the patient after a demand for supporting material has been made. Furthermore, Dr. Hunt had recently changed the claimant's medication. These findings are contained in a form largely consisting of checked boxes without further explanation. These findings are inconsistent and contrast sharply with the other evidence of record, rendering them less persuasive. The claimant engages in considerable activities of daily living. He is able to cook, wash dishes, mow the lawn, and go to church.

AR 33.

**B. Dr. Riffel – Examining Psychiatrist**

On May 19, 2012, Plaintiff underwent a comprehensive psychiatric consultative examination with Dr. Aimee Riffel. AR 320-24. Plaintiff presented with linear and goal directed thoughts with normal speech and no hallucinations. AR 322. Dr. Riffel characterized Plaintiff's mood as anxious

with a nervous affect. AR 322. Plaintiff had good past memory, a good fund of knowledge/information, could concentrate on a three-step task, and demonstrated intact insight. AR 322-23. Dr. Riffel opined that "mental health factors alone would not likely interfere with his ability to complete a normal workday." AR 323. She assessed Plaintiff's GAF at 65, indicative of "mild" symptoms. AR 324. She found him "capable of completing simple and repetitive tasks;" that he likewise would not have difficulty with complex tasks related to mental health factors. Plaintiff, however, "would have difficulty dealing with overall stress within the work environment," adding that "his mental health symptoms do not appear to [be] sufficiently stable at this time" and that he "has limited insight regarding the factors which may [have] influence upon his overall mental health functioning." AR 324.

With respect to Dr. Riffel's opinion, the ALJ found as follows:

> I give this assessment partial weight. The finding that the claimant is capable of performing simple, routine tasks is consistent with the record, the claimant's considerable activities of daily living and his performance during the interview. The claimant is able to prepare meals and read the bible. During the interview the claimant was able to complete a three-step command. The conclusion that the claimant would have difficulty dealing with the overall stress in a work environment is inconsistent with the claimant's performance during the examination. Dr. Riffel only saw the claimant once.
>
> AR 32.

**C. Nonexamining Physicians – Drs. Genece and Davis**

State agency reviewing psychologist, Nadine Genece, Psy. D, reviewed the record on June 14, 2012, and found that Plaintiff was capable of simple work. AR 96. Dr. Genece expected that Plaintiff could perform unskilled work at a competitive pace without additional supervision. Plaintiff could sustain focus for two-hour increments and could complete normal work activity as long as detailed and complex work was precluded. AR 97. Dr. Genece indicated that Plaintiff should avoid more than occasional public contact. AR 98. He could work with others at a job that did not require frequent collaborative effort. Plaintiff could travel and would be aware of hazards, he could tolerate stress inherent in competitive employment, as long as the demands of the job did not exceed the limitations

outlined above. AR 98. On January 11, 2013, P. Davis Psy. D, agreed with Dr. Genece's findings. AR 124-125.

With respect to the reviewing physicians' opinions, the ALJ found as follows:

> I give these assessments substantial weight. They are based on a thorough review of the file. These doctors are familiar with the Social Security Administration's disability programs and their evidentiary requirements.

AR 32.

**D. Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

In the hierarchy of physician opinions considered in assessing a social security claim, "[g]enerally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Orn v. Astrue*, 495 F.3d 625 (9th Cir. 2007). *See also*, 20 C.F.R. § 404.1527(c)(1)-(2). If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." 20 C.F.R. § 404.1527(c)(2).

If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the

Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id.* § 404.1527(c)(2)(i)-(ii). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id.* § 404.1527(c)(3)-(6).

**E. The ALJ Provided Specific and Legitimate Reasons to Reject the Examining Physician's Opinion**

As noted above, the ALJ gave partial weight to the opinion of examining physician Dr. Riffel, but the ALJ discounted her finding that Plaintiff would have difficulty dealing with the overall stress in a work environment. The ALJ gave Dr. Riffel's opinion partial weight for three reasons: (1) Dr. Riffel's findings were inconsistent with Plaintiff's performance during the interview; (2) Plaintiff's considerable activities of daily living supported a finding of simple, routine tasks; and (3) Dr. Riffel saw Plaintiff only once. Having reviewed the record, the Court determines that these were sufficiently specific and legitimate to partially reject Dr. Riffel's opinion as follows.

First, the ALJ discounted Dr. Riffel's findings because Plaintiff's performance upon examination was inconsistent with a finding that he would have difficulty dealing with stress at work. Where all or part of an examining physician's opinion is contradicted by other, independently derived evidence, the ALJ may reject all or part of such opinion by setting forth specific and legitimate reasons that are supported by substantial evidence in the record. *See Rollins v. Massanar*i, 261 F.3d 853, 856 (9th Cir. 2001). Even a cursory review of the consultative report illustrates that nothing in Dr. Riffel's examination demonstrated that Plaintiff was incapable of handling stress at the workplace. The ALJ noted that during the interview with Dr. Riffel Plaintiff denied experiencing any hallucinations, was able to complete a three-step command, and that Dr. Riffel assessed a GAF score of 65, indicating

"some difficulty in social, occupational, or school functioning but generally functioning pretty well." AR 31, 323-24. The ALJ further credited Dr. Riffel's statement that based on the examination Plaintiff could perform simple and repetitive tasks and would not need additional supervision in the work environment for these types of tasks. AR 32, 324. Dr. Riffel's examination further reported that during the interview Plaintiff exhibited normal thoughts, full orientation, "good past memory," and a good fund of knowledge. AR 322. These findings contradicted Dr. Riffel's opinion on Plaintiff's stress management.

Plaintiff is critical of the ALJ's analysis of Dr. Riffel's opinion, arguing that the ALJ failed to identify any aspect of the examination that he considered inconsistent, however, that is not an entirely correct reading of the ALJ's opinion. The ALJ considered several components of Dr. Riffel's opinion including, Plaintiff's subjective reports "den[ying] experiencing auditory or visual hallucinations;" the diagnostic testing performed by Dr. Riffel "assign[ing] Plaintiff a Global Assessment Functioning (GAF) score of 65; and Plaintiff's performance during the interview where Plaintiff "was able to complete a three-step command." The ALJ then discounted Dr. Riffel's findings as specifically inconsistent with Plaintiff's performance during the examination. This was a specific and legitimate reason to partially reject Dr. Riffel's opinion. Plaintiff's performance during the examination was wholly unremarkable. He was appropriately attired, his "thoughts were linear and goal directed," he completed a three-step task "without hesitation or difficulty," and he was able to "adequately do abstractions." Dr. Riffel's findings that Plaintiff would succumb to stress at work may have been based on Plaintiff's subjective complaints, or a prior diagnosis, but it was not error for the ALJ to find that those findings were inconsistent with Plaintiff's performance on the day of the examination.

Second, the ALJ measured Dr. Riffel's opinion against Plaintiff's "considerable activities of daily living." AR 32. Items in the record that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005); *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of the SSA*, 169 F.3d 595 (9th Cir.1999). Plaintiff's daily activities demonstrate an ability to perform simple routine tasks and handle work

related stress. Elsewhere in the ALJ's opinion he noted that Plaintiff supervised his niece, was able to care for a pet, and was very active at church three times a week. AR 34. These activities undermined Dr. Riffel's findings that Plaintiff would have difficulty managing stress at work.

Finally, Plaintiff challenges the ALJ's statement that Dr. Riffel only saw the claimant once. Generally, the Court agrees that it makes little sense to discount an examining physician based on a one time examination because the point of a consultative examiner is to see the patient once. S*ee Pasos v. Colvin*, No. 14-1334, 2015 U.S. Dist. LEXIS 28675, 2015 WL 1097329, at *5 (C.D. Cal. Mar. 9, 2015) (concluding that ALJ's finding that examining physician had examined claimant only once was not legitimate reason to discount physician's opinion because "it is well-settled that the opinions of examining physicians (who normally see claimants only once) are entitled to deference"); However, within the context of the entire paragraph, the ALJ is discounting Dr. Riffel's general finding of a longitudinal inability to manage stress at work based on a one-time examination. AR 32. The ALJ's determination that Dr. Riffel's findings regarding stress were questionable in light of the one-time examination is certainly reasonable in the context of this case. There is nothing in Plaintiff's examination that illustrates that Dr. Riffel gained any particular insight into Plaintiff's inability to handle stress over time. Most of the findings at the time of the examination were normal. His functioning assessment showed only mild impairments, and Plaintiff was deemed able to manage his own funds. AR 323-324. In this instance, the Court cannot say it was error for the ALJ to question Dr. Riffel's findings in this regard based on a one-time examination. But in any event, even if the ALJ erred in relying on this factor, it was harmless because he provided another specific and legitimate reason for partially discounting Dr. Riffel's opinion. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (nonprejudicial or irrelevant mistakes harmless).

Essentially, it is the ALJ's province to review and evaluate the evidence as a whole. Often, there may be more than one rational interpretation of the evidence. Thus, if the ALJ's interpretation is supported by substantial evidence, it will be upheld. *See Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ provided specific and legitimate reasons for partially rejecting Dr. Riffel's opinion.

**F. The ALJ Provided Specific and Legitimate Reasons to Reject the Treating Physician's Opinion**

With respect to Plaintiff's treating physician, the ALJ also proffered specific and legitimate reasons supported by substantial evidence to discount Dr. Hunt's opinion. The ALJ first correctly pointed out that Dr. Hunt's "findings are contained in a form consisting largely of checked boxes without further explanation." AR 33. The opinion of a physician may be rejected when it is "conclusory and brief" and lacks the support of clinical findings. *Magallanes*, 881 F.2d at 751; *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (a physician's opinion may be rejected "if brief and conclusory in form with little in the way of clinical findings to support [its] conclusion"). Consequently, the Ninth Circuit determined that an ALJ may reject or give less weight to a treating physician's opinion that is in the form of a checklist, where the opinion is brief and lacks supportive objective evidence. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ permissibly rejected . . . check-off reports that did not contain any explanation of the bases of their conclusion"); *Batson v Comm'r of Soc. Security*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("treating physicians' views carried only minimal evidentiary weight" when in the form of a checklist and lacking supportive objective evidence).

Here, Plaintiff argues that the form submitted by Dr. Hunt was not largely checkbox, but that "ten of the remaining twenty-one questions elicited Dr. Hunt's handwritten answers." (Doc. 12 at 20). Plaintiff states correctly that the "impairment questionnaire" submitted by Dr. Hunt consists of checkboxes, check-lists, and fill in the blank questions where Dr. Hunt could offer opinions and explanations for the limitations indicated throughout the questionnaire. AR 332-339. However, where the form called for further comments, Dr. Hunt largely failed to provide further information. Some questions are left blank (AR 337) and the other questions do not require a response depending on whether the physician checks "yes" or "no." AR 333, 338. Dr. Hunt also failed to complete the section requiring her to detail the clinical findings or observations that supported her conclusions. AR 338. Thus, despite the questionnaire's attempt to solicit more detailed information, Dr. Hunt provided the type of conclusory unsupported responses that are afforded no special weight in accordance with

the Social Security Regulations. The ALJ was therefore justified in discounting Dr. Hunt's treating opinion on this ground.

Second, the ALJ rejected Dr. Hunt's opinion of the severity of Plaintiff's symptoms because such limitations drastically differed from substantial evidence in the record. AR 33. In doing so, the ALJ provided two rationales. First, the ALJ speculated that the reason for the drastic difference may be a by-product of Dr. Hunt's sympathy for her patient. Second, the ALJ found that changes to Plaintiff's medications may have distorted Dr. Hunt's findings as her assessment "[did] not represent the claimant's present level of functioning with medication." AR 33. Despite these rationales, the probative finding here is that the ALJ rejected Dr. Hunt's opinion because it was not supported by substantial evidence in the record.

In explaining why Dr. Hunt's opinion was inconsistent with the medical evidence, the ALJ pointed in part to Dr. Hunt's treatment records demonstrating that Plaintiff was not taking his prescribed medication as directed. An ALJ may properly discount a treating physician's opinion that is not supported by the medical record. *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (*citing Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). The ALJ reviewed Dr. Hunt's treatment notes which repeatedly documented Plaintiff's history of sporadic compliance with medication. AR 344 (February 2012 notation that Plaintiff "not taking medicines"); AR 325 (July 2012 statement that "he does not take his medication as prescribed"); AR 359 (October 2012 statement that he stopped taking his Prozac and fluphenazine medications "a few weeks ago"); AR 373 (June 2013 note that Plaintiff "discontinued [Abilify] approximately one month ago" and reported "struggling with more anger and agitation," and thus agreed "to restart 5 mg Abilify daily"). This was a specific reason to discount Dr. Hunt's opinion. *See Rocha v. Comm'r of Soc. Sec.*, No. 15-1298-SAB, 2016 U.S. Dist. LEXIS 166202, 2016 WL 7034739 (E.D. Cal. Nov. 30, 2016) (Court affirmed ALJ determination that the opinions of the mental health physicians were undermined because Plaintiff was non-compliant with his psychiatric medications). When Plaintiff took his medication as prescribed he showed mild improvement. AR

361. The ALJ could therefore rationally conclude that Dr. Hunt's opinions did not accurately reflect Plaintiff's level of functioning. If the evidence is susceptible to more than one rational interpretation as it is here, the Court may not substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d at 954; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d at 599.

The ALJ's secondary reason is less supportive. Evidence that a doctor has "agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits" can under certain circumstances constitute a specific, legitimate reason to give a medical opinion little weight. *Burkhart v. Bowen*, 856 F.2d at 1339 (evidence that doctor's opinion was solicited by claimant's counsel a "permissible credibility determination"); *Hernandez v. Colvin*, No. 12-330-SMS, 2013 U.S. Dist. LEXIS 112147, 2013 WL 4041862 at *32-37 (E.D. Cal. Aug. 7, 2013) (finding the ALJ was appropriate to question the motivations of a physician who prepared a last minute perfunctory form provided by Plaintiff's attorney.). However, the Court frowns upon ALJs discounting doctors' opinions on the ground that a treating physician was sympathetic to the claimant "in order to help their patient get disability benefits." *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995); *Case v. Astrue*, 425 Fed. Appx. 565, 566 (9th Cir. 2011)(unpublished) ("[t]he purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them" unless there is additional evidence demonstrating impropriety). Most problematic here though is that the ALJ failed to cite to any evidence of Dr. Hunt's bias in the record, although that evidence arguably exists.

A search of the record reveals that Dr. Hunt's opinion may be the possible result of sympathy for the patient. AR 33. Plaintiff frequently requested support for his disability claim. See AR 311 ("need disability" paperwork), AR 344 ("trying to get disability"). Plaintiff's problems were frequently related to "accessing health care, finances, occupation." AR 358, 360, 362. Dr. Hunt also began treating Plaintiff on August 28, 2012, after he submitted his applications for benefits and over a year after he began to experience disabling symptoms in May 2011. AR 332, 339. Despite having no prior treatment relationship with Plaintiff, Dr. Hunt backdated her disability opinion 15 months without any medical basis to opine that Plaintiff's disability began the very month that Plaintiff himself alleged. *Freeman v. Berryhill*, No. 15-1031-BAM, 2017 U.S. Dist. LEXIS 18735, 2017 WL

550579, at *6 (E.D. Cal. Feb. 8, 2017) (ALJ could question the validity of a backdated opinion). Nonetheless, while the Court declines to determine whether the ALJ's decision in this regard was error, ultimately any error was harmless given that this was just one of two reasons supporting the ALJ's conclusion that Dr. Hunt's findings were unsupported by the record.

Finally, the ALJ again discounted Dr. Hunt's opinions based on Plaintiff's considerable activities of daily living. "Plaintiff is able to cook, wash dishes, mow the lawn, and go to church." AR 33. As stated above, the nature of these particular activities undermined Dr. Hunt's findings. Whereas Dr. Hunt found Plaintiff was markedly limited in the ability to set realistic goals and make plans independently, his daily activities were in direct conflict. Plaintiff's pastor testified that he attended church three times a week without fail, in addition to his other activities demonstrated throughout the record. AR 407. This evidence was sufficient to discount Dr. Hunt's finding that Plaintiff suffers from a significantly limiting mental health condition.

Ultimately here, the ALJ articulated specific and legitimate reasons when weighing the medical opinions of Drs. Hunt and Riffel. Based on a review of the record, the Court concludes that the ALJ adequately evaluated the medical record. Accordingly, the Court will not reverse or remand the ALJ's treatment of the medical evidence.

**2. The ALJ's Determination That Plaintiff Was Not Fully Credible is Supported by at Least One Clear and Convincing Reason**

"Where, as here, an ALJ concludes that a claimant is not malingering, and that []he has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms alleged, the ALJ may 'reject the claimant's testimony about the severity of h[is] symptoms only by offering specific, clear and convincing reasons for doing so.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492-93 (9th Cir. 2015) (*quoting Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). Even if "the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony," if he "also provided valid reasons that were supported by the record," the ALJ's error "is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error

'does not negate the validity of the ALJ's ultimate conclusion.'" *Molina*, 674 F.3d at 1115 (quoting *Batson*, 359 F.3d at 1195-97.

"The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008) (internal citations and quotations omitted); *see also Thomas,* 278 F.3d at 958-59 (explaining that acceptable bases for credibility determination include (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).

**A. Analysis**

In finding that Plaintiff's subjective complaints were less than fully credible, the ALJ provided six reasons as follows:

- That some of Plaintiff's activities were not as limiting as one would expect such as supervising his niece, food shopping, watching television, and caring for a pet dog which required regular attention and physical effort. Plaintiff also goes outside three or four times a day, helped his stepfather who is in a wheelchair, attends church and church functions on Sundays, Wednesdays, and Thursdays. Plaintiff reads the bible and is limited in driving due to a violation and not an inability.

- That Plaintiff made inconsistent statements about why he lost his last job as a janitor. He reported to the psychological examiner that he was laid off due to budget cuts, but in a disability report he stated he quit working because he was accused of stealing.

- That Plaintiff demonstrated a pattern of poor compliance with his prescribed medications, and demonstrated a lack of commitment to his doctor's recommendations.

- That Plaintiff's demeanor during a face-to-face interview with the SSA and during the administrative hearing before the ALJ did not demonstrate that Plaintiff struggled with concentration or comprehension.

- That Plaintiff experienced other non-medical problems, including an inability to pay for health services, which suggests that at least some of Plaintiff's difficulties may be situational and not medical in nature.

- That Plaintiff's subjective allegations were inconsistent with the objective medical evidence.

AR 34-35.

Plaintiff challenges all six of the ALJ's rationales, but the ALJ was only obliged to provide at least one clear and convincing reason supported by substantial evidence for rejecting Plaintiff's testimony. *See Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). The ALJ did so here. The ALJ was entitled to conclude that Plaintiff's inconsistent statements about the circumstances from which he left his prior job materially affected his believability. AR 34. Plaintiff told consultative examiner Dr. Riffel that "he was laid off from Los Banos school district due to budget cuts." AR 34, 322. However, in a disability report, Plaintiff stated that he "stopped working when he quit his job as a custodian at a school district because he was accused of stealing." AR 34, 239. Plaintiff attempts to blame Dr. Riffel for this inconsistency, arguing that "the statement in Dr. Riffel's report was made by Dr. Riffel, not by Plaintiff." (Doc. 12 at 24). In Plaintiff's view, the ALJ should have questioned him at the hearing about whether the statement attributed to him in Dr. Riffel's report was accurate. Instead, however, "the ALJ chose to believe that [Plaintiff] had lied about the circumstances of his job loss, without even bothering at the hearing to ascertain the accuracy of that statement." (Doc. 12 at 24). Plaintiff however misreads the record.

At the hearing, Plaintiff's testimony was consistent with Dr. Riffel's statement. Plaintiff testified that he stopped working because he was laid off, not because he was accused of stealing, as follows:

[Q]: Now you indicated that you stopped working because you were accused of stealing. What happened there?

[A]: I never stole anything in my life, judge. I don't know who's accusing me of that, but I'm not no thief.

[Q]: Did they – they didn't fire you, you quit?

[A]: No, I got laid off.

[Q]: Okay.

[A]: Yeah.

[Q]: If you had not been laid off do you think you'd still be working there?

[A]: I would say, yeah, if I hadn't got laid off.

AR 388.

Per the evidence cited above, the ALJ's determination that Plaintiff gave inconsistent statements about the reason he left his last job is supported by substantial evidence. Plaintiff lists on his disability report that the reason for stopping work on October 29, 2010 was: "I quit because I was accused of stealing." AR 239. However at the hearing, Plaintiff stated that he "got laid off." AR 388. This was consistent with the statement reported by Dr. Riffel; which standing alone was not reasonably in dispute. Dr. Riffel's statement appears to be specifically transcribed directly from Plaintiff's statement about his employment history, beginning with "He reports . . ." AR 322. By citing these inconsistent statements, the ALJ provided a clear and convincing reason for discounting Plaintiff's credibility. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) ("ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct"). The ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for lying and inconsistencies in his statements or between his statements and his conduct. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Thomas*, 278 F.3d at 958-59 (Claimant's inconsistent statements about her prior drug use revealed a "lack of candor" that "carries over to her description of physical pain."); *Alonzo v. Colvin*, 2015 U.S. Dist. LEXIS 122298, 2015 WL 5358151 at *17 (E.D. Cal. Sept. 11, 2015) (one inconsistent statement "comprised a clear and convincing reason to discount Plaintiff's credibility").

Had this been the only reason given, it would still have been sufficient to support an adverse credibility determination. *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (An "ALJ's finding that a claimant generally lacked credibility is a permissible basis to reject excess pain testimony."); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) ("If a claimant ... is found to have been less than candid in other aspects of his testimony, that may properly be taken into account

in determining whether his claim of disabling pain should be believed."). The Court, however, further concludes that the ALJ supported his credibility finding with an additional clear and convincing reason by referring to the dissonance between Plaintiff's reported daily activities and his testimony that in a "typical day" he does "basically nothing." AR 399. At any given time, Plaintiff is arguably part babysitter, part dog sitter, and/or an active parishioner. AR 34. It was therefore proper for the ALJ to determine that Plaintiff's activities of daily living were not as limiting as one would expect given Plaintiff's complaints of disabling symptoms. *See Molina*, 674 F.3d at 1112 (the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms").

The ALJ provided two clear and convincing reasons supported by substantial evidence to discount Plaintiff's credibility—where only one was required. *See Carmickle*, 533 F.3d at 1163; *Batson*, 359 F.3d at 1197 (finding that striking down one or more justifications for discrediting a claimant's testimony amounted to a harmless error where the ALJ presented other reasons for discrediting the testimony that were supported by substantial evidence in the record). Therefore, even if Plaintiff's other allegations are truly error; the articulated reasons discussed here must lead the Court to affirm the ALJ's adverse credibility decision. Plaintiff's challenge on this ground fails.

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court **DENIES** Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is **DIRECTED** to enter judgment in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff James Martin.

IT IS SO ORDERED.

Dated: **March 17, 2017**

/s/ Barbara A. McAuliffe

UNITED STATES MAGISTRATE JUDGE